1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

| | | |
|---|---|---|
| GEORGE CLINTON, | ) | Case No. |
| an individual resident of the State of Florida, | ) | |
| | ) | |
| Plaintiff, | ) | **VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT RELIEF, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT** |
| v. | ) | |
| | ) | |
| HENDRICKS & LEWIS, PLLC a Washington professional limited liability company, and OSCAR YALE LEWIS, JR., an individual resident of the State of Washington, | ) | |
| | ) | |
| | ) | **JURY DEMAND** |
| Defendants. | ) | |

COMES NOW Plaintiff, GEORGE CLINTON, and brings this action against

Defendants, the law firm HENDRICKS & LEWIS, PLLC, and OSCAR YALE LEWIS, JR.

Plaintiff asserts and alleges the following upon information and belief:

## PARTIES

1.    Plaintiff, George Clinton (hereinafter "MR. CLINTON"), is a resident of the State of

Florida.

2.    Defendant, Hendricks & Lewis, PLLC (hereinafter "H&L"), is a Washington

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 1**

1   professional limited liability company.

2   3.      Defendant, Oscar Yale Lewis, Jr. (hereinafter ATTORNEY LEWIS) is an individual

3   resident of the State of Washington and a member of the Washington State Bar Association and

4   a partner in the Hendricks & Lewis law firm (hereinafter H&L and ATTORNEY LEWIS are

5   collectively referred to as "the Defendants").

6

7                           **JURISDICTION AND VENUE**

8   4.      This Court has subject matter jurisdiction in this case under the federal diversity

9   jurisdiction provisions pursuant to 28 U.S.C. § 1332 as there is a complete diversity of

10  citizenship between the Plaintiff and the named Defendants as well as the Declaratory

11  Judgment Act, 28 U.S.C. § 2201 *et seq.*, and, upon information and belief, the amount in

12  controversy exceeds $75,000.00.

13

14  5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part

15  of the events or omissions on which the claim is based occurred in the Western District of

16  Washington.

17                          **FACTUAL BACKGROUND**

18  6.      MR. CLINTON is a well-known musical recording artist, songwriter, and performer in

19  the entertainment industry who could reasonably and legitimately be described as a living

20  legend in the music industry.  Among other musical groups and genres, MR. CLINTON has

21  been a songwriter, artist, publisher, and producer for the acts "Parliament," "Funkadelic" and

22

23  "The Pfunk Allstars" since the late 1960s and continuing to this day as a solo act, "George

24  Clinton."

25  7.      Throughout the course of his prolific career, MR. CLINTON has created and innovated

26  literally thousands of original musical works, compositions, and sound recordings consisting of

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 2**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   a musical portfolio and legacy which has generated enduring copyrightable subject matter

2   having a financial value to be measured in the tens of millions of U.S. dollars as valued by its

3   worth in commercial viability and/or subsisting intellectual property rights.

4

5   8.      Regrettably, the majority of MR. CLINTON's works and musical legacy have been

6   usurped and/or misdirected by former managers, attorneys, record labels, etc. through

7   questionable and sometimes fraudulent means, which has resulted in multiple prior legal

8   actions before the various state and Article III federal courts throughout the United States.

9   9.      One such lawsuit was *Montes v. Kaplan, Kenegos & Kadin,* et al., CV03-8955R (MCx),

10  a federal action before the Honorable Manuel Real in the United States District Court for the

11  Central District Court of California. In the *Montes* action MR. CLINTON sought to recover his

12  ownership rights to certain of his Funkadelic master recordings that had been misappropriated

13  and commercially exploited in an unauthorized manner by MR. CLINTON's former manager,

14  Nene Montes.  In 2005, during the course of the *Montes* action, MR. CLINTON discovered and

15  began to formulate the building blocks of what he believed to be a meritorious action under the

16  Racketeering Influenced And Corrupt Organizations (RICO) Act, set forth at 18 U.S.C. §1961

17  *et seq.*

18

19  10.     In response, MR. CLINTON took action to research and evaluate legal counsel with

20  experience in civil RICO litigation.  MR. CLINTON learned that ATTORNEY LEWIS and

21  H&L  previously represented the estate of the late musician, Jimi Hendrix, as the plaintiff in a

22  civil RICO action relating to the Jimi Hendrix musical catalog.  The defendants in the Jimi

23  Hendrix civil RICO action were associated with attorney Robert Michael Rosenfeld, who had

24  also previously represented MR. CLINTON in the early 1980s.  Robert Michael Rosenfeld was

25  connected to many of the suspect documents that surfaced in the *Montes* action before Judge

26

VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 3

Lybeck✦Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

Real of the U.S. District Court for the Central District of California.

11.     On or about March 2005, MR. CLINTON contacted ATTORNEY LEWIS in the hopes that he could retain the legal services of the Defendants to represent him in a civil RICO action wherein MR. CLINTON would be a named plaintiff.

12.     Between March 31, 2005 and the end of May, 2005, the Defendants invoiced MR. CLINTON approximately $70,000 in legal fees to interview MR. CLINTON and other witnesses, as well as to review the history, chronology of events, and other critical information supporting the contemplated civil RICO action to be filed on MR. CLINTON'S behalf.

13.     On May 25, 2005, MR. CLINTON executed a formal retainer agreement provided by ATTORNEY LEWIS which established the parameters of the attorney/client relationship between MR. CLINTON and the Defendants. A copy of the agreement is attached hereto as Exhibit 1.

14.     The May 25, 2005 retainer agreement provided, in pertinent part: "Both you and our firm agree that if any dispute should arise between you and us **regarding the amount of the fees or costs due to us** under the terms of this agreement, the exclusive means of resolving the dispute shall be by submission to binding arbitration with the American Arbitration Association."

15.     The May 25, 2005 retainer agreement did not contain any other arbitration or forum selection clause.

16.     On or about May 26, 2005, the Defendants received a report from forensic document examiner Richards Forensic Services of Laurel, Maryland. Richards Forensic Services was previously retained by ATTORNEY LEWIS to review, and opine upon the accuracy and validity of, two critical "assignments" - a December 2, 1981 Assignment of highly valuable

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 4**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

Funkadelic masters and an October 17, 1980 Settlement Agreement regarding highly valuable portions of MR. CLINTON'S musical catalog, including certain Parliament master recordings. See Exhibit 2.

17.     In the May 26, 2005 forensic report, Gerald B. Richards conveyed his findings to the Defendants, including ATTORNEY LEWIS, that the assignment documents at issue contained identical cut and paste signatures belonging to MR. CLINTON that were simply sourced and inserted into the assignment documents from a third document which did, in fact, contain MR. CLINTON's signature.

18.     On June 17, 2005, Judge Real of the U.S. District Court for the Central District of California issued Findings of Fact and Conclusions of Law in the *Montes* case in favor of MR. CLINTON.  The Order and Judgment acknowledged that MR. CLINTON was the legal and lawful owner of the Funkadelic master recordings at issue in that litigation.  The court further found that MR. CLINTON had not signed the December 11, 1981 assignments purporting to grant rights in those master recordings to Nene Montes' company (Tercer Mundo) and that MR. CLINTON did not assign or license his rights in the Funkadelic masters at issue to Montes, Tercer Mundo or anyone else.

## THE CHARLY RECORDS MATTER

19.     In February 2007, MR. CLINTON advised the Defendants that an entity named Charly Records was actively selling internationally, the musical works and master recordings of the Funkadelic musical group.  Charly Records was actively selling the musical works and master recordings through a purported agreement with MR. CLINTON'S former business manager, Nene Montes (the same individual who in the *Montes* action, Judge Real determined had no rights to the Funkadelic masters at issue to assign or license to anyone).

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 5**

Lybeck✦Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

20.     On April 20, 2007, ATTORNEY LEWIS drafted and sent Charly Records a demand letter regarding the unauthorized use of the Funkadelic masters.  See Exhibit 3.

21.     On July 7, 2007, Charly Records responded to ATTORNEY LEWIS with an acknowledgment that it was, in fact, selling certain Funkadelic musical groups pursuant to a purported licensing arrangement between Charly Records and Nene Montes.  See Exhibit 4.

22.     Charly Records expressed a desire to negotiate a licensing agreement directly with MR. CLINTON and made an opening offer that included a $200,000 advance, among other terms.

23.     From March, 2007 until August, 2007, ATTORNEY LEWIS and the Defendants invoiced MR. CLINTON in excess of $30,000 for drafting the initial April 20, 2007 demand letter and a brief reply to the Charly Records' letter, and researching whether to add Charly Records to another pending lawsuit against Capitol Records relating to the domestic sale of certain Funkadelic master recordings.

24.     Despite Charly Records' acknowledgement of its ongoing unauthorized sale of certain Funkadelic master recordings and its July 7, 2007 opening offer to negoatite to acquire the rights those masters (which included paying MR. CLINTON a $200,000 advance), and further despite the Defendants billing MR. CLINTON $30,000 in legal fees to address this issue with Charly Records, the Defendants took no further action to advance a licensing arrangement with Charly Records or to enforce MR. CLINTON'S legal rights against Charly Records.

**THE UNIVERSAL MUSIC GROUP (UMG) ACTION**

25.     In October 2005, in anticipation of filing a new legal action on behalf of  MR. CLINTON against the Universal Musical Group (UMG), ATTORNEY LEWIS drafted a tolling extension letter agreement with UMG.  The tolling agreement was necessary to ensure that MR. CLINTON's rights to pursue claims against UMG were preserved.  The letter extended the

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 6**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1    limitations period set by the terms of a purported contract between MR. CLINTON and UMG.

2    However, ATTORNEY LEWIS failed to adequately address and effectively toll the statute of

3    limitations established by California law (separate and apart from the language of the purported

4    contract).

5
6    26.    On January 29, 2007, the Defendants, on behalf of MR. CLINTON, filed suit against

7    UMG seeking, among other relief, payment of certain royalties and other amounts on behalf of

8    MR. CLINTON, individually. MR. CLINTON believed had these claims been adequately

9    preserved by virtue of the prior tolling letter agreement prepared by ATTORNEY LEWIS.

10   27.    The Defendants did not review the UMG contracts which formed the bases for the

11   action nor did they review the complaint with MR. CLINTON prior to its filing on January 29,

12   2007.  Instead, the Defendants relied on Clinton's estranged wife, Stephanie Clinton, for

13   information and purported authorization to file the complaint.

14   28.    The complaint alleged a claim for breach of contract and included an allegation that  the

15   October 17, 1980 Settlement Agreement and the October 23, 1980 Artist (Parliament)

16   Agreement attached to the complaint (and upon which the claim was based) were true and

17   correct copies of those agreements.  These documents had been produced by UMG to MR.

18   CLINTON.  The  Defendants however had actual knowledge and receipt of the May 26, 2005

19   forensic document report of Richards Forensic Services (Exhibit 2) wherein the Defendants'

20   own document expert, Gerald B. Richards, concluded that the October 17, 1980 Settlement

21   Agreement could not be authenticated because of obvious alterations. See Exhibit 2.  Despite

22   having this information, the Defendants asserted claims for breach of these contracts alleging

23   them to be true and correct copies of the contracts.  The Defendants did not assert a cause of

24   action for fraud or challenge the validity of the agreements.

25
26

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 7**

29.    In addition, the Defendants commenced the UMG action on behalf MR. CLINTON individually.   They did not name as a plaintiff MR. CLINTON'S production company, Thang, Inc., even though the underlying agreements with UMG upon which the Defendants based the complaint, were between UMG and Thang, Inc.

30.    This pleading error resulted in UMG asserting a fundamental lack of standing argument in a motion for summary judgment.

31.    The Defendants also knew or should have know at the time that they commenced the UMG action that there was a statute of limitations problem because the previous 2005 letter tolling agreement specifically extended only the limitations period established for the exercise of certain rights under the contracts, but not the statute of limitations for a breach of contract claims under California law.

32.    In February 2008, in the course of discovery, UMG produced a third purported agreement, the "Parlet Agreement" dated December 23, 1980.  The Parlet Agreement purported to confirm the terms of an agreement entered into by UMG and MR. CLINTON sometime at the end of 1980 but which was subsequently lost by both parties.

33.    On information and belief, ATTORNEY LEWIS believed that the December 23, 1980 "Parlet Agreement" also contained material alterations and forensic document issues. However, the Defendants failed to retain a forensic document expert to examine the Parlet Agreement, failed to designate an expert witness to offer testify regarding the Parlet Agreement, or to otherwise challenge the authenticity of the Parlet Agreement or any of the other documents UMG relied upon to assert its ownership of MR. CLINTON'S master recordings.

34.    On April 24, 2008 and April 25, 2008, MR. CLINTON and long-time consultant to MR. CLINTON, Archie Ivy, were deposed in the UMG action.  MR. CLINTON and Mr. Ivy were

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 8**

Lybeck ❖ Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   questioned about the various prior agreements at issue, including the October 17, 1980

2   Settlement Agreement (which was the subject matter of the forensic document report at Exhibit

3   2) as well as the December 23, 1980 "Parlet Agreement" which was produced by UMG during

4   discovery.

5   35.    Prior to the depositions of MR. CLINTON and Mr. Ivy in Los Angeles, California,

6   ATTORNEY LEWIS met with MR. CLINTON at his hotel room the evening before and again

7   on the day of MR. CLINTON's deposition at the offices of UMG's counsel to discuss MR.

8   CLINTON's contemplated testimony and otherwise prepare for deposition.  Richard Gomez

9   was present at the first meeting at the hotel room, and Archie Ivy was present at the second

10  meeting.

11  36.    At both meetings between ATTORNEY LEWIS and MR. CLINTON, ATTORNEY

12  LEWIS instructed and directed MR. CLINTON to testify under oath that he had, in fact, signed

13  the October 17, 1980 Agreement upon which the complaint was based.  MR. CLINTON was

14  adamant, however, that he had not signed the purported agreement and would not testify that he

15  had.   See Exhibits 5 and 6.

16  37.    In his April 24, 2008 deposition, MR. CLINTON was asked whether he executed the

17  October 17, 1980 Settlement Agreement which was attached to and formed the basis of the

18  complaint in the UMG action.  MR.CLINTON testified truthfully that he did not sign this

19  agreement.

20  38.    In addition both MR. CLINTON and Mr. Ivy testified that they had not previously seen

21  the December 23, 1980 "Parlet Agreement" prior to its production by UMG, and  that they did

22  not sign this December 23, 1980 "Parlet Agreement."

23  39.    Notwithstanding the May 2005 forensic document report (Exhibit 2) and the April 2008

VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 9

Lybeck✣Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1  deposition testimony of MR. CLINTON and Mr. Ivy, the Defendants still did not take any steps

2  to retain and identify a forensic document expert or other witnesses to challenge the

3  authenticity of the contracts produced and relied upon by UMG.

4  40.      After MR. CLINTON'S April 24, 2008 deposition, UMG filed a Motion for Summary

5  Judgment seeking dismissal of MR. CLINTON's claims based on the following arguments: 1)

6  MR. CLINTON'S claims were barred by the statute of limitations because the 2005 letter

7  tolling agreement negotiated by the Defendants did not toll the necessary statute of limitations;

8

9  2) MR. CLINTON lacked standing to bring the claims individually and Thang, Inc. was the real

10  party in interest as signatory to the operative agreements; and 3) MR. CLINTON had repudiated

11  the October 17, 1980 Settlement Agreement which formed the basis of his complaint against

12  UMG based on his deposition testimony that he had not signed the document.

13

14  41.      UMG also filed a Rule 11 Motion against ATTORNEY LEWIS for filing a complaint

15  attaching the October, 1980 Settlement Agreement as a document executed by MR. CLINTON,

16  when he knew that MR. CLINTON would truthfully deny signing it.

17  42.      Based upon the status of the UMG action, MR. CLINTON contacted his former in-

18  house counsel, Attorney Janet Conway, and asked her to review UMG's Motion for Summary

19  Judgment and the draft opposition brief thereto prepared by the Defendants.

20

21  43.      Upon review, Conway recalled that during her previous employment with MR.

22  CLINTON in 2005, while working on the *Montes* action before Judge Real, she located what

23  she believed to be evidence that the signatures on the purported 1981 Assignment, discussed in

24  Paragraph 16 above and at Exhibit 2 hereto, were a "cut and paste" of the October 17, 1980

25  Settlement Agreement.

26

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 10**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

44.     At that time in 2005, Attorney Conway had mistakenly thought that the October 17, 1980 Settlement Agreement contained "known" signatures.  Attorney Conway had requested Gerald Richards, (who was referred to Attorney Conway by ATTORNEY LEWIS) to determine the authenticity of the 1981 Assignments based on a comparison of the signatures on the 1980 Settlement Agreement.  This analysis resulted in the May 26, 2005 Forensic Document Report at Exhibit 2.

45.     However, the Richards Forensic Services report, after examination of the 1981 Assignment and the October 17, 1980 Agreement, concluded that both were "cut and paste" documents from a third document.

46.     On May 28, 2008, Attorney Conway prepared and circulated a memorandum to MR. CLINTON summarizing the 2005 report and MR. CLINTON'S consistent position that he did not sign the contracts. See Exhibit 7.  MR. CLINTON provided a copy of the May 28, 2008 memorandum to the Defendants.

47.     Despite this information, the Defendants still did not retain a forensic document expert for the UMG action, or otherwise challenge the authenticity of the documents relied upon by UMG, nor did the Defendants seek to strike and/or exclude these documents from evidence in connection with UMG's Motion for Summary Judgment.  Ultimately, UMG's Motion for Summary Judgment was granted, leaving only one claim for trial.

48.     On July 1, 2008, Attorney Conway met with ATTORNEY LEWIS and MR. CINTON in advance of the UMG trial scheduled to take place in July 2008.  At that meeting, Attorney Conway learned that UMG would likely be relying on the December 23, 1980 "Parlet Agreement" that it produced to MR. CLINTON during discovery, and reiterated her concerns that unresolved questions existed about the document's authenticity.

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 11**

Lybeck✤Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

49.     On July 3, 2008, Attorney Conway was copied on correspondence from ATTORNEY LEWIS to MR. CLINTON which caused Attorney Conway to become even more concerned that the Court adjudicating the UMG case may find the December 23, 1980 "Parlet Agreement" to be authentic.  That same day, UMG filed briefing with the court confirming UMG's position that the Parlet Agreement was authentic: "UMG has produced both a 1977 written Parlet agreement and a December 1980 written Parlet agreement in discovery, as well as a settlement agreement referencing Parlet, which UMG will introduce at trial. While Plaintiff has denied that these are the operative agreements, the fact is that UMG has and will produce evidence at trial of written agreements governing the relationship with Parlet. . . ."

50.     On July 7, 2008, UMG filed its Trial Brief, and again relied upon the December 23, 1980 "Parlet Agreement" stating:  "In addition, P-Funk and Casablanca entered into another written agreement concerning Parlet and other artists dated December 23, 1980, which Plaintiff also signed (the "1980 Parlet Agreement")."  UMG further argued "the 1980 Parlet Agreement expressly references and incorporates certain provisions of the Artist's Production Agreement."

51.     On July 9, 2008, Attorney Conway spoke with David Oleksow, a highly reputable forensic document expert to see if he could perform an immediate review of the questionable document(s) relied upon by UMG.  On July 10, 2008, Mr. Oleksow reviewed a *.pdf* scanned copy of the December 23, 1980 agreement and concluded the document was highly suspicious.  However, Mr. Oleksow required the actual hard copy exhibit produced by UMG to the Defendants to make a more formal opinion.  Mr. Oleksow received the actual copy of the exhibit from the Defendants on July 11, 2008, and that afternoon, confirmed his opinion that the document was altered.

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 12**

Lybeck✦Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

52.     On July 9, 2008, Attorney Conway also contacted Mr. Richards, the forensic document expert who performed the 2005 examination on the 1981 Assignment and 1980 Settlement Agreement.

53.     Mr. Richards informed Attorney Conway he possessed, in his file, the report he prepared and sent to ATTORNEY LEWIS on May 26, 2005.  Attorney Conway requested that Mr. Richards provide her with a copy of that report.

54.     On July 14, 2008, Mr. Oleksow was formally retained by Attorney Conway and he began immediate preparation of a Declaration containing his opinion that the signature page of the October 17, 1980 Settlement Agreement document has been intentionally altered and could not be relied upon by the Court as a genuine document.

55.     On July 18, 2008, Attorney Conway received by facsimile, the May 26, 2005 report from Mr. Richards confirming Mr. Richards' conclusion that the October 17, 1980 Settlement Agreement contained  a cut and paste signature.  See Exhibit 2.

56.     On July 21, 2008, Mr. Richards' report was forwarded to Mr. Oleksow for review, and on July 22, 2008, Mr. Oleksow also received an electronic file of an additional July 19, 1977 agreement also alleged to have been signed by MR. CLINTON and produced by UMG in discovery.   Based upon his review of this information, Mr. Oleksow filed a supplemental declaration in the UMG action questioning the authenticity of the agreements that UMG relied upon in the action.

57.     Subsequent to the July 1, 2008 meeting between ATTORNEY LEWIS and Attorney Conway and less than two weeks before the scheduled trial date of July 15, 2008, ATTORNEY LEWIS attempted to withdraw as counsel of record in the UMG action .

58.     However, MR. CLINTON did not consent to the requested withdrawal and insisted that

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 13**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   ATTORNEY LEWIS remain as trial counsel because he believed the Court would not continue

2   the trial date sufficiently far enough out for new counsel to adequately prepare for trial.

3   59.     ATTORNEY LEWIS, MR. CLINTON, and Attorney Conway met again on July 13,

4   2008 to discuss the trial and how ATTORNEY LEWIS might  introduce the testimony and

5   materials of Mr. Oleksow at trial. The following day, on July 14, 2008 (the day before trial was

6   scheduled to commence), ATTORNEY LEWIS filed a surprise emergency motion to withdraw,

7   prejudicing MR. CLINTON'S case.

8

9   60.     On July 15, 2008, the UMG Court allowed ATTORNEY LEWIS to withdraw  and

10  continued the trial date until August 19, 2008.  By letter dated August 8, 2008, the Defendants

11  formally terminated its legal representation of MR. CLINTON.

12

13  61.     Attorney Larry Clough, a member of the State Bar of California, substituted as trial

14  counsel for ATTORNEY LEWIS and the case proceeded to trial on August 19, 2008.  Despite

15  the skilled efforts of Mr. Clough, trial resulted in an adverse ruling for MR. CLINTON.

16  62.     Attorney Clough timely filed a notice of appeal of the UMG case to the United States

17  Court of Appeals for the Ninth Circuit.

18  63.     On April 20, 2010, the U.S. Court of Appeals for the Ninth Circuit reversed the prior

19  rulings of the district court and remanded the case to the U.S. District Court for the Central

20  District of California.

21

22  64.     The UMG action is currently pending before the U.S. District Court for the Central

23  District of California and a Scheduling Conference has been set for October 24, 2011.

24

25                          **H&L ARBITRATION MATTER**

26  65.     Between MR. CLINTON's first contact with ATTORNEY LEWIS and the Defendants

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 14**

1   in March 2005 and continuing through the time of the Defendants' withdrawal in the UMG

2   action on July 14, 2008, MR. CLINTON paid the Defendants in the range of $1,000,000.00 for

3   legal services.

4   66.      However, as of August 8, 2008, the date of the Defendants' letter to MR. CLINTON

5   terminating it legal services, the Defendants claimed that MR. CLINTON owed them more than

6   $1,500,000.00 in additional fees.  Of this amount, the Defendants claimed more than

7   $500,000.00 was incurred for work on the UMG case.

8   

9   67.      In 2009, the Defendants initiated an arbitration action for unpaid legal fees in excess of

10  $1.5 million based upon Exhibit 1.  MR. CLINTON was unable to afford to retain and pay for

11  timely legal representation in the arbitration action due to a loss of his income stream resulting

12  from UMG's efforts to collect its attorneys' fees resulting from the litigation.  As a result, the

13  Defendants obtained an award of fees in 2010.

14  

15  68.      The Defendants then filed an action before the U.S. District Court for the Western

16  District of Washington to confirm the arbitration award and have subsequently attempted to

17  gain control of, garnish, and/or otherwise attach MR. CLINTON'S various royalty income

18  producing accounts for his musical works as well as both his personal and company bank

19  accounts.

20  

21  69.      The Defendants have also filed liens in two pending federal litigation actions before the

22  U.S. District Court for the Central District of California in which MR. CLINTON is a named

23  plaintiff.  One of these actions is the UMG action discussed herein.

24  70.      The Defendants also filed a separate action assigned to the Honorable Otis D. Wright II

25  of the U.S. District Court for the Central District of California and moved the federal court for a

26  turn-over order relating to MR. CLINTON's various accounts and assets.  This action is

VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY
JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 15

Lybeck✦Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   pending and a hearing is set for August 31, 2011.

2   **FIRST CLAIM FOR RELIEF**

3   **(Declaratory Relief Under 28 U.S.C. § 2201, *et se*q. Seeking A Declaration That The Scope**
4   **of the H&L Arbitration Award Is Expressly Limited To Disputes "Regarding The**
    **Amount Of Fees" Charged Consistent With The May 25, 2005 Legal Retainer Agreement**
5   **Between The Parties)**

6   71.   MR. CLINTON realleges and incorporates by reference paragraphs 1 through 70 of the

7   Complaint above as if fully set forth herein.

8   72.   The May 25, 2005 Retainer Agreement between the parties at Exhibit 1 specifically
9
10  limited the jurisdiction of the arbitration panel (AAA)  to disputes "regarding the amount of the

11  fees" MR. CLINTON would owe the Defendants.

12  73.   The arbitration panel (AAA) lacked jurisdiction to hear any claims regarding legal

13  malpractice and fraudulent inducement.

14  74.   MR. CLINTON has acted, throughout all relevant time periods in good faith.

15
16  75.   The Defendants pursued and obtained the H&L Arbitration Award, which was

17  confirmed by the U.S. District Court for the Western District of Washington, relating to a

18  dispute regarding the amount of fees charged for its services. However  the H&L Arbitration

19  Award does not, and could not, address or adjudicate any other dispute pursuant to the May 25,

20  2005 Retainer Agreement at Exhibit 1 and the services provided by the Defendants, thereby

21  clouding the respective rights and obligations of the parties.

22  76.   MR. CLINTON possesses and hereby asserts timely claims and demands against the
23
24  Defendants stemming from its prior legal representation of him which relate to issues, disputes,

25  and claims other than those "regarding the amount of fees" charged pursuant to the May 25,

26  2005 Retainer Agreement at Exhibit 1.

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY**
**JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 16**

Lybeck✦Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

77.   By reason of the foregoing, there is an actual and justiciable controversy between MR. CLINTON and the Defendants as to claims and demands other than those "regarding the amount of fees" charged pursuant to the May 25, 2005 Retainer Agreement at Exhibit 1.

78.   Accordingly, MR. CLINTON requests relief under the Declaratory Judgment Act from this Court that the existing H&L Arbitration Award solely addresses claims "regarding the amount of fees" charged pursuant to the May 25, 2005 Retainer Agreement at Exhibit 1 and that MR. CLINTON has the full legal right, title, and interest to bring, file, and assert the present action against the Defendants as to all claims and demands other than those "regarding the amount of fees" charged pursuant to the May 25, 2005 Retainer Agreement at Exhibit 1.

## SECOND CLAIM FOR RELIEF

### (Professional Negligence/Legal Malpractice)

79.   MR. CLINTON realleges and incorporates by reference paragraphs 1 through 78 of the Complaint above as if fully set forth herein.

80.   An attorney-client relationship existed between MR. CLINTON and the Defendants from at least March 2005 through August 2008.

81.   As a result of the attorney-client relationship, Defendants owed a duty of skill and care to MR. CLINTON.

82.   An attorney exercising the knowledge, skill, and ability normally possessed and exercised by members of the legal profession in similar circumstances would have pursued resolution of the Charly Records Matter and its unauthorized use of MR. CLINTON's musical works through negotiation or litigation.

83.   An attorney exercising the knowledge, skill and ability normally possessed and exercised by members of the legal profession in similar circumstances would have timely filed

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1    an action against UMG in 2005 or, alternatively, negotiated a reliable tolling agreement on

2    behalf of MR. CLINTON which reasonably and effectively tolled both the statute of limitations

3    period established under the terms of the contract and the limitations period defined under

4    California law for all of MR. CLINTON'S claims  in order to protect any potential claims

5    available to MR. CLINTON against UMG.

6

7    84.      An attorney exercising the knowledge, skill and ability normally possessed and

8    exercised by members of the legal profession in similar circumstances would have timely filed

9    an action against UMG for fraud and not breach of contract, and further would have timely

10   retained and designated an expert in forensic document analysis and/or at least followed the

11   existing forensic document report that was known to the Defendants and set forth at Exhibit 2.

12   85.      To the extent that an attorney exercising the knowledge, skill and ability normally

13   possessed and exercised by members of the legal profession in similar circumstances would

14   have filed a breach of contract claim against UMG, the breach of contract claim should

15   reasonably have been asserted in the name of the contractual party, Thang, Inc., as a party

16   plaintiff instead of MR. CLINTON in his individual capacity.

17

18   86.      MR. CLINTON has suffered damages (which include, but are not limited to, the amount

19   of attorneys' fees MR. CLINTON was forced to stipulate to pay to UMG) as a direct and

20   proximate cause of the Defendants' breaches of the duty of care.

21

22                                   **THIRD CLAIM FOR RELIEF**

23                                     **(Fraudulent Inducement)**

24   87.      MR. CLINTON realleges and incorporates by reference paragraphs 1 through 86 of the

25   Complaint above as if fully set forth herein.

26

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 18**

88.     ATTORNEY LEWIS made material misrepresentations of fact to MR. CLINTON, including that H&L would pursue a civil RICO action on his behalf.  These representations were false when made because, in fact, ATTORNEY LEWIS never intended to file a civil RICO action on behalf of MR. CLINTON.

89.     MR. CLINTON reasonably relied, and had a right to reasonably rely, upon the representations of ATTORNEY LEWIS regarding H&L's intent and commitment to pursue a civil RICO action on his behalf.

90.     MR. CLINTON entered into the May 25, 2005 Retainer Agreement at Exhibit 1with the Defendants in justifiable reliance upon ATTORNEY LEWIS' representation that H&L would pursue a civil RICO action on his behalf.

91.     Had ATTORNEY LEWIS revealed the truth at the time of the execution of the May 25, 2005 Retainer Agreement at Exhibit 1, MR. CLINTON would not have entered into that agreement.

92.     Defendant ATTORNEY LEWIS fraudulently induced MR. CLINTON to enter the May 25, 2005 Retainer Agreement with the Defendants by misrepresenting his state of mind and failing to disclosure that Defendants had no intent to pursue a civil RICO action on his behalf.

93.     Defendant ATTORNEY LEWIS convinced MR. CLINTON to pursue other lawsuits to generate the funds necessary to maintain a civil RICO action, yet Defendants charged, billed, and invoiced MR. CLINTON in excess of $3.5 million dollars in legal fees, the amount of which could have easily covered the cost of pursuing the contemplated civil RICO action for MR. CLINTON.

94.     MR. CLINTON has suffered damages as direct and proximate cause of  the intentional misrepresentation(s), omission(s), and concealment(s) made by ATTORNEY LEWIS.

VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 19

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

**FOURTH CLAIM FOR RELIEF**

**(Negligent Misrepresentation)**

95.     MR. CLINTON realleges and incorporates by reference paragraphs 1 through 94 of the Complaint above as if fully set forth herein.

96.     Defendant ATTORNEY LEWIS made material misrepresentations of fact, including that H&L would pursue a civil RICO action on his behalf.  ATTORNEY LEWIS should have known that these representations were false and/or materially misleading when they were made to MR. CLINTON.

97.     MR. CLINTON reasonably relied upon these statements by ATTORNEY LEWIS to his detriment by entering into the May 25, 2005 Retainer Agreement.

98.     MR. CLINTON has suffered damages as a direct and proximate result of ATTORNEY LEWIS by the negligent misrepresentations and omissions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants Hendricks & Lewis PLLC and Oscar Yale Lewis, Jr. jointly and severally, as follows:

    a.     The Court declare that the H&L Arbitration Award is limited to the dispute regarding the amount of fees charged under the May 25, 2005 legal representation letter agreement between the parties.

    b.     The Court declare further that the AAA Arbitration Panel lacked jurisdiction and/or authority to resolve causes of action for legal malpractice, fraudulent inducement, negligent misrepresentation set forth against the Defendants herein;

    c.     Compensatory and monetary damages, plus interest, in an amount to be determined at trial, but which is currently believed to be in excess of Ten Million Dollars

VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 20

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1  ($10,000,000)  for the malpractice in both the Charly Records matter and UMG action; the acts

2  of fraudulent inducement to enter into the May 25, 2005 Retainer Agreement, and the acts of

3  negligent misrepresentation;

4          d.          Punitive damages to the fullest extent permitted by law as may be available

5  under the causes of action alleged above or which may be alleged in an amended complaint;

6

7          e.          Costs and disbursements including statutory and reasonable attorneys' fees

8  under applicable law in connection with prosecuting this action;

9          f.          Prejudgment interest on the entire judgment;

10         g.          Post-judgment interest on the entire judgment until paid in full; and

11

12         h.          Such other and further relief as this court deems just and proper.

13   Respectfully submitted this 11th day of July, 2011.

14                                          LYBECK MURPHY, LLP

15                                          By:____/s/ Katherine L. Felton_____
16                                          Lory R. Lybeck, WSBA # 14222
                                            Katherine L. Felton, WSBA #30382
17                                          Attorneys for Plaintiff George Clinton
                                            Lybeck Murphy, LLP
18                                          Fifth Floor
                                            Chase Bank Building
19                                          7900 SE 28th Street
                                            Mercer Island, WA  98040-6004
20                                          (206) 230-4255/(206) 230-7791 (Fax)

21

22  Counsel to George Clinton:

23  Jeffrey P. Thennisch (Michigan Bar P51499)
    Dobrusin & Thennisch, PC
24  29 W. Lawrence Street, Suite 210
    Pontiac, Michigan 48342
25   (248) 292-2920/(248) 292-2910 (Fax)
    *Pro Hac Vice* Application to be filed
26

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY**            Lybeck✦Murphy LLP
**JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 21**     Fifth Floor Chase Bank Building
                                                                     7900 SE 28th Street
                                                                     Mercer Island, WA  98040-2334
                                                                     206-230-4255   Fax 206-230-7791

1

2                        VERIFICATION OF GEORGE CLINTON

3

4         Under penalty of perjury, I declare that I am the above-referenced complainant; I have

5 read the complaint and know the contents thereof; and the matters set forth in this complaint are

6 true and correct of my own knowledge, except as to matters stated to be on information and

7 belief, and as to those matters are believed to be true and correct by me.

8

9

10

11                     _____

12                     George Clinton

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**VERIFIED COMPLAINT FOR LEGAL MALPRACTICE, DECLARATORY JUDGMENT, FRAUDULENT INDUCEMENT, AND BREACH OF CONTRACT - 22**

Lybeck❖Murphy LLP
Fifth Floor Chase Bank Building
7900 SE 28th Street
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

## VERIFICATION OF GEORGE CLINTON

Under penalty of perjury, I declare that I am the above-referenced complainant; I have read the complaint and know the contents thereof; and the matters set forth in this complaint are true and correct of my own knowledge, except as to matters stated to be on information and belief, and as to those matters are believed to be true and correct by me.

_____
George Clinton

**EXHIBIT 1**

# HENDRICKS & LEWIS

999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104

telephone (206) 624-1933
facsimile (206) 583-2716
www.hllaw.com

April 4, 2005

Mr. George Clinton
c/o George Ware (ware@georgeclinton.com)

Dear Mr. Clinton:

On behalf of Hendricks & Lewis, we thank you for selecting our firm as your attorneys. In accordance with the Washington Rules of Professional Conduct, this letter confirms the terms and conditions under which Hendricks & Lewis agrees to provide legal services to you, including the anticipated scope of our services and our firm's billing policies and practices. Please review this letter carefully and, if it is acceptable, return a signed copy to me at your earliest convenience, along with any agreed payment, so as not to delay the commencement of our work on your behalf. If you have any questions or concerns, please let me know promptly.

1.     **Client.**

The Client/s for whom Hendricks & Lewis will be providing legal services (referred to in this letter as "you") is George Clinton. This engagement specifically excludes representation of others.

2.     **Scope of Engagement.**

The services we provide will include advice and representation regarding pre-litigation analysis and possible trial services ("Matter").

3.     **General Responsibilities of Hendricks & Lewis and Client.**

Hendricks & Lewis will provide the legal services described in section 2 above; will keep you informed of developments as appropriate; and will consult with you as necessary to ensure the timely, effective, and efficient completion of our work. We will bill you for services provided, as described in section 4 below.

You will assist us by, among other things:  providing us with such factual information

{59930.DOC}

Mr. George Clinton
May 25, 2005
Page 2

and documents as we require to perform our services; making yourself (and, if appropriate, your employees and agents) reasonably available for consultations and interviews; and making any decisions and determinations that are appropriate to facilitate the performance of our services.

We agree to use our best efforts in representing you in this Matter; however, we do not guarantee a particular result.

4.      **Billing Policies and Procedures.**

Our charges for legal services include both fees and costs.

We charge for our services on an hourly basis.  Statements for professional services will be provided to you monthly, and charges for lawyers, paralegals and other professionals employed by us will be in accordance with our regular hourly rates as in effect at the times the services are rendered.  Our billing rates may be adjusted from time to time.  Our current hourly rates are:

| | |
|---|---|
| Partners | $350-$425 |
| Of Counsel | $250-$275 |
| Associates | $200-$250 |
| Law clerks | $85 |
| Senior Paralegals | $100-$125 |
| Junior Paralegals & | |
| Document Clerks | $45-$65 |

Fees are determined by multiplying the number of hours spent working on your Matter by our billing rates.  The minimum billing increment for attorneys and paralegals is one tenth of an hour.  My hourly rate for this Matter will be $425.  Although it is anticipated that I will be the attorney principally responsible for this Matter, other attorneys and personnel may assist me in order to serve you in the most efficient and cost-effective manner.

The services for which we charge fees may include not only time spent with you, but also, if appropriate: conferences with others on your behalf; factual investigation; legal research; preparation of pleadings, correspondence, and other documents; review, drafting, and negotiation of agreements, instruments, and similar documents; office conferences with lawyers and staff; appearances at court, depositions, and other places; travel; and other necessary activities on your behalf.

Our statements will also include our usual and customary charges for support services incurred on our client's behalf.  We charge the actual cost of outside messengers, air courier,

{59930.DOC}

Mr. George Clinton
May 25, 2005
Page 3

express mail and bulk mailing. There is no charge for regular mail. We charge $.15 per page for photocopying. (With respect to duplicating, we will use outside vendors if it is cost effective to do so.) We also charge for long distance calls and computer-assisted research. We charge for staff overtime, meals and transportation only when you specifically request after-hours efforts or where the nature of the work necessitates overtime and such work could not have been done during normal working hours. In circumstances where substantial or unusual third-party payments are required (e.g., expert fees, transcripts, or any single charge more than $500 without prior written consent of client), we reserve the option to forward the charge to you for direct payment and prior to trial or other hearing on the merits to obtain advanced funds from you to cover anticipated disbursements and costs.

We will send you a statement for fees and costs each month. The statement normally contains a detailed description of the services performed, the fees charged, and the costs advanced through the end of the previous month. Costs that have been advanced during a month, but not posted by the end of that month, will appear on a subsequent statement.

Payments of statements are due within 30 days. A finance charge of one percent per month will be imposed on any balance more than 30 days past due. Subject, of course, to our ethical obligations, you agree that we may terminate our legal services and withdraw from this engagement if our statements are not paid in a timely manner. If you are unable to pay a statement timely and in full, you should contact our bookkeeping department to make other payment arrangements.

It is often difficult, if not impossible, to estimate accurately the amount of fees and costs that will be incurred in a particular matter; therefore, any estimates of fees and costs that we might give you should not be interpreted as fixed fees or guaranteed maximum fees.

Prior to commencement of services, we request an advance against fees and costs of $10,000. The advance will be deposited in our client trust account. We will make withdrawals of the funds in that account to apply to the balance due or to the extent that you fail to pay a monthly statement within 30 days. If we apply all or part of the funds on deposit to the payment of fees and/or costs, we will so advise you and you will be expected promptly to replenish the trust account by the amount that we withdrew from the account and applied toward your outstanding balance. An additional advance may be required before we undertake certain substantial services (for example, extensive discovery, motions, a trial or hearing, or representation in a new or additional matter). If our services are terminated for any reason, we

{59930.DOC}

Mr. George Clinton
May 25, 2005
Page 4

will promptly return to you any amount remaining in the client trust account after payment of all
outstanding fees and costs.

### 5. Files.

We will keep your files for 10 years after the conclusion of the matter. Thereafter, we
will attempt to notify you that we plan to destroy your file. If we cannot locate you or you
advise us to, we will have the file confidentially destroyed at that time. If you would like the file
returned, it will be made available for pickup.

### 6. Termination of Services.

You may terminate this representation at any time by informing us that you no longer
have a need for our services. We may terminate our services to you by informing you that the
firm will no longer provide services on your behalf, provided that the termination is consistent
with the Washington Rules of Professional Conduct.

### 7. Enforcement of Agreement.

Both you and our firm agree that if any dispute should arise between you and us
regarding the amount of the fees or costs due to us under the terms of this agreement, the
exclusive means of resolving the dispute shall be by submission to binding arbitration with the
American Arbitration Association. If this becomes necessary, the non-prevailing party shall be
responsible for paying the reasonable fees and costs incurred by the prevailing party in the
arbitration proceedings and in any related judicial enforcement proceedings. Both you and we
agree that the results of the arbitration shall be final.

### 8. Sole Agreement.

This is the sole agreement between you and our firm regarding our representation of you
in this Matter. This agreement may be modified only by a later writing signed by both you and
our firm.

Should you ever wish to discuss any aspect of our legal services, please do not hesitate to

{59930.DOC}

Mr. George Clinton
May 25, 2005
Page 5

call me directly or to speak to one of our other attorneys who is familiar with the Matter.

We look forward to serving you and thank you again for asking us to assist you in this Matter.

Sincerely,

HENDRICKS & LEWIS

O. Yale Lewis, Jr.

cc:    Barbarella Bishop (barbarella@georgeclinton.com)
       Stephanie Clinton (steph@georgeclinton.com)

APPROVED AND AGREED TO:

Signature: _____

Printed Name: George Clinton

Title: _____

Date: 5-25-05

{59930.DOC}

**EXHIBIT 2**

07/18/2008  22:06   4356047733                                                    PAGE  01/04
JUL-10-2008(THU) 17:14   Christopher K. Sowers, P.C.      (FAX)718 636 3867        P.003/011

# RICHARDS FORENSIC SERVICES
### EXAMINER OF QUESTIONED DOCUMENTS AND PHOTOGRAPHS
15307 Alan Drive, Laurel, Maryland 20707
301-725-3778; Fax 301-725-1714

May 26, 2005

Mr. O. Yale Lewis, Jr.
Hendricks & Lewis
999 Third Avenue
Suite 2675
Seattle, Washington 98104

**REFERENCE:** Letter from Janet M. Conway, dated April 2, 2005.

**LABORATORY FILE NUMBER:** A05017D

**ITEMS RECEIVED:** Via Federal Express from Janet M. Conway on April 4, 2005.

Qc1    Photocopy of nine page LICENSING OF MASTERS AND TRANSFER OF
       COPYRIGHTS AGREEMENT dated 1/29/80, bearing three questioned George Clinton
       signatures on the left side of the last page.

Qc2    Photocopy of five ASSIGNMENT OF RIGHTS documents, all dated 12/11/81, bearing
       the questioned signature of George Clinton on the right side of each page, with four pages
       containing a stamped number further described as follows:

|       | Stamped Number |
|-------|----------------|
| 1)    | 75             |
| 2)    | 76             |
| 3)    | None           |
| 4)    | 78             |
| 5)    | 79             |

Qc3    Photocopy of one page of a GENERAL AFFIDAVIT dated 10/16/84, bearing the
       questioned signature of George Clinton on the right side.

Qc4    Photocopy of two page AFFIDAVIT dated 10/27/84, bearing the questioned signature of
       George Clinton on the right side.

Kc1    Photocopy of what appears to be the first page and page seventeen of a RELEASE AND
       SETTLEMENT AGREEMENT dated 10/17/80, with page seventeen bearing seven
       signatures of George Clinton, four on the left side and three on the right side

Kc2     Photocopy of a stapled seven page document containing several other documents
        described as follows:

    1)   ARTIST'S PRODUCTION AGREEMENT dated 10/23/80 bearing no
      signature.

    2)   Document marked as page 3, dated 10/23/80, bearing the signature George
      Clinton on the right side.

    3)   Document marked as "EXHIBIT 'D' " P-FUNK, INC. ACTION BY
      UNANIMOUS WRITTEN CONSENT OF THE BOARD OF
      DIRECTORS, dated 10/22/80, bearing the signature George Clinton on
      the right side.

    4)   Document marked as page 2, with the printed date 1980, bearing the
      signature George Clinton on the right side.

    5)   Document marked as page 5, undated, bearing the signature George
      Clinton on the right side.

    6)   Document marked as page 2, dated 10/23/80, bearing the signature George
      Clinton on the right side.

    7)   Document marked as page 52, undated, bearing the signature George
      Clinton on the right side.

Kc3     Photocopy of five page MUTUAL AND GENERAL RELEASE dated 8/18/82, bearing
        two signatures of George Clinton on the right side of the last page.

Kc4     Photocopy of CONSENT TO ASSIGNMENT dated 7/16/85, bearing the signature of
        George Clinton on the right side.

**ITEMS RECEIVED:** Via Federal Express from Shoshana Samole on April 6, 2005.

Kc5     Copies of Kc2 with one additional page as follows:

    8)   Document marked page 2, undated, bearing the signature George Clinton
      on the right side.

Kc6     Photocopy of seventeen page RELEASE AND SETTLEMENT AGREEMENT dated
        10/17/80, with page seventeen bearing seven signatures of George Clinton, four on the
        left side and three on the right side, similar to Kc1, but having a different set of
        signatures.

**REQUEST:** Determine if the signatures on Qc2 are reproductions of any of the signatures on
Kc1. Furthermore, determine if the signature on the Qc3 and Qc4 are or are not the genuine
signatures of George Clinton, Kc1 through Kc6.

**RESULTS OF EXAMINATION:** This examination/comparison is based on an individual

2

examination of each document, and a side-by-side comparison of the questioned and known
materials. The examination is normally conducted visually using various degrees of
magnification and differing light sources, as required. The objective of this examination is to
establish whether there are dissimilarities, absent characters, and/or similarities between the
known and questioned writing, and to evaluate their significance individually and in
combination. In addition, the writings are examined in detail regarding the line quality, rhythm,
letter structure, relative size, speed, minutiae, etc. Based on all of the aforementioned
information, a determination is made as to whether a reasonable conclusion can be drawn.

In general, examination of photocopies of the questioned writing is problematic. Most copies of
original written documents are usually degraded to some degree by the copy process, resulting in
a loss of fine detail in the writing. Also common is a reduction of line quality and skips in the
writing where it has not been completely reproduced. In addition, color and pen pressure can not
be determined and there is usually an increase in contrast and distortion. Many of the very things
that are necessary to identify or eliminate a writer may be undetectable, such as connecting
strokes, retraces, ending and beginning strokes, line shading and pen lifts. These factors may
mask, or emulate, characteristics of simulation, tracing or intentional disguise, which are all at
the heart of the examination. A Forensic Document Examiner must work with the observable
facts in order to garner a meaningful opinion regarding the genuineness of questioned writing, or
genuineness of the entire document. It is always most desirable to have original questioned
documents, and if possible, original known specimens for comparison.

It was determined that the questioned signature on the Qc2-4, is the same signature that appears
on Kc1-6. It was further determined that the questioned signature on the Qc2-5, is the same
signature that appears on Kc1-5. The Qc2 signatures corresponding to the Kc1 signatures are
most probably a result of a physical or computer "cut and paste". The signatures on Qc2 and their
corresponding signatures on Kc1 originated from the same original master signatures. The Qc2
signatures bear the same photocopy defects as the Kc1 signatures indicating that some or all of
the signatures were duplicated from photocopies of the original master signature. (See two
attached charts)

It was further determined that the Qc3 signature is not a genuine normal course of business
signature of George C. Clinton based on the Kc1 through Kc6 specimens. It is unlikely that the
writer of Qc3 can be determined from this distorted signature.

Due to the very poor quality of the Qc4 signature it could not be determined whether this
questioned signature was or was not written by George C. Clinton Kc1 through Kc6.

Qc1 through Qc4 and Kc1 through Kc6 have been copied and are being temporarily retained in
this laboratory.

07/18/2008  22:06   4356047733                                    PAGE  04/04
JUL-11-2008(FRI) 10:05    Christopher K. Sowers, P.C.    (FAX)718 636 3867    P. 003/005

Gerald B. Richards

Enclosures:
      Curriculum Vitae
      Articles, Papers Presented. Lectures & Meetings (Partial List)
      Trial/Deposition Testimony List
      Fee Schedule

**EXHIBIT 3**

April 20, 2007

Paul Lambeth LLB
ENT-LAW Solicitors
3 Grange Farm Business Park
Sandy Lane, Shedfield, Southampton, Hants SO32 2HD

**Re:  Unauthorized Use of Funkadelic Sound Recordings**

Dear Mr. Lambeth:

      This firm represents George Clinton and I am writing on behalf of Mr. Clinton regarding Charly Records' past and continuing unauthorized exploitation of Funkadelic sound recordings owned by Mr. Clinton.

      Specifically, despite prior notice to Charly Records of Mr. Clinton's sole ownership of the four Funkadelic master recordings entitled "One Nation Under a Groove," "Uncle Jam Wants You," "Hardcore Jollies," and "The Electric Spanking of War Babies" and Mr. Clinton's objection to Charly Records' unauthorized use of those recordings, it is our understanding that Charly Records has continued to release these recordings, including box sets and compilations comprised in whole or in part of these recordings, in both Europe and the United States in contravention of Mr. Clinton's rights and without any payment to Mr. Clinton.

      However, in February 2007, it is our understanding that Charly Records' Chairman, Jean Luc Young, agreed to release funds Charly Records is apparently holding relating to its use of the Funkadelic Masters to Mr. Clinton, the rightful owner of those recordings.  By this letter, Mr. Clinton hereby demands that payment of these funds be made to him immediately but in any event no later than two weeks from your receipt of this letter.  Payment of all such funds relating to Charly Records' exploitation of the Funkadelic Masters, including but not limited to all such funds received in the future, should be made to Mr. Clinton c/o Hendricks & Lewis, made payable to Hendricks & Lewis, IOLTA Trust Account.  This payment should be accompanied by an accounting of Charly Records' exploitation of the Funkadelic Masters and any portions thereof in both Europe and the United States or a firm deadline by which such an accounting will be provided to Mr. Clinton.

      In addition, Mr. Clinton demands that with the payment, Charly Records provide him with copies of any and all licenses, assignments or other transfer of rights pursuant to which Charly Records claims it is authorized to exploit the Funkadelic Masters or any portion thereof in Europe and/or the United States.  Assuming that Charly Records fulfills its agreement to pay all

{74613.DOC}

Paul Lambeth LLB
April 20, 2007
Page 2

funds it is currently holding in connection with the Funkadelic Masters to Mr. Clinton, the rightful owner of the Masters, in recognition of that good faith action, Mr. Clinton is interested in discussing whether the parties can find a business solution to this issue that benefits both parties without time-consuming and costly litigation but cannot begin any such discussion until the requested information is provided to him.

This letter is written without prejudice to any of George Clinton's or related business entities' rights or remedies, all of which are hereby expressly reserved. Without limiting the generality of the foregoing, Mr. Clinton's acceptance of the payment demanded herein and his request for further information regarding Charly Records' use of the Funkadelic Masters is not intended to be and shall not be construed as a waiver of his right to seek additional remedies including but not limited to damages and injunctive relief.

If you have any questions, please do not hesitate to contact me.

Sincerely,

HENDRICKS & LEWIS

O. Yale Lewis, Jr.

By Federal Express

{74613.DOC}

# EXHIBIT 4



**SOLICITORS**

# FACSIMILE TRANSMISSION

| | |
|---|---|
| TO: | Mr O Yale Lewis Jr. |
| OF: | Hendricks & Lewis |
| FAX NO: | 001 206 583 2716 |
| FROM: | Paul Lambeth |
| RE: | Charly Acquisitions Ltd - George Clinton - Funkadelic Recordings |
| OUR REF: | C0001175 |
| DATE: | **2 July, 2007** |
| NO. OF PAGES: | **5**   (including cover sheet) |

**IF THIS TRANSMISSION IS INCOMPLETE, PLEASE
TELEPHONE US ON 01329 834100 IMMEDIATELY**

The information contained in this fax is confidential and is intended only for the use of the person or entity named above. If you are not that person or entity, or responsible for delivering it to them, you are hereby warned that the dissemination, distribution or copying of this fax is strictly prohibited. If you have received this fax in error, please notify us immediately by telephone and return the original to us at the address below by post. We will refund the postage to you. Thank you.

MESSAGE:

3 Grange Farm Business Park, Sandy Lane, Shedfield, Southampton, Hants SO32 2HD
Tel 01329 834100 • Fax 01329 834448 • E-mail Paul@ent-law.co.uk
PROPRIETOR PAUL LAMBETH LLB



SOLICITORS

Mr O Yale Lewis Jr.
Hendricks & Lewis
901 Fitth Avenue
Suite 4100
Seattle
Washington
98164

Our Ref: PL/ C0001175
Your Ref:
02 July 2007

**BY FACSIMILE TRANSMISSION**

Dear Sir

Re:-    **Charly Acquisitions Ltd - George Clinton - Funkadelic Recordings**

Firstly, may I apologise for the delay in replying to you. I have been very heavily engaged upon other matters and have only recently been able to meet with and discuss this matter with my client.

Before going further may I first provide you with a little information about my client. Charly Acquisitions Ltd was formed in the mid 1990's and it purchased a large number of master sound recordings and the rights to the "Charly" trade name from a company called Charly Holdings Inc.

Charly Acquisitions Ltd is registered in Nevis and it has its main administrative offices in the Channel Islands.

Today Charly Acquisitions Ltd owns and/or controls one of the largest catalogues of "re-issue" master sound recordings in the World. It is the sole owner of certain recordings by such legendary performers as The Yardbirds, The Animals and Sonny Boy Williams and is the joint owner of the legendary "Immediate Catalogue" which includes recordings by The Small Faces, Rod Stewart, Eric Clapton, P.P. Arnold, The Nice, Humble Pie, Amen Corner and many others. In addition to sound recordings which it has purchased Charly Acquisitions also "controls" through licenses a vast number of other sound recordings including the legendary SUN and VEE JAY Catalogues of recordings by such artists as Jerry Lee Lewis, Johnny Cash and Roy Orbison. In total there are in excess of 80,000 tracks in its catalogue – see http://www.Charly.co.uk.

Recently Charly Acquisitions Ltd has also begun to build an extensive catalogue of audio-visual recordings the details of which can be viewed here: http://charlyfilms.com.

The size and diversity of the catalogue sets Charly Acquisitions Ltd aside from its competitors making it a "port of first call" for those looking to license master sound recordings whether for straight re-releases;

Continued ../..

Case 2:11-cv-01142-RSL   Document 1   Filed 07/11/11   Page 41 of 52

02/07 2007 17:54 FAX 01329834448       ☐ 003/005

Mr O Yale Lewis Jr.                                           Page 2 of 3
2 July 2007

compilations; artist, era or genre compilations; collectors specials and sound tracks for film, television and advertisements.

Charly Acquisitions market position allows it to actively work its' entire catalogue by coupling recordings and requiring licensees to take a minimum number of recordings to avoid "cherry picking".

Charly Acquisitions is also know for its stance in aggressively policing and protecting the master sound recordings it owns or controls from unauthorised exploitation. At any given time it is normally prosecuting proceedings against infringers in various territories. This is seen by it's licensors as a significant "added value" to their license fees and royalties.

Turning to the Funkadelic recordings my client has exploited these pursuant to agreements between it and Nene Montes/Tercer Mundo Inc dated 15th December 1999 and 22nd March 2000. I am sending you with this letter (by courier) copies of those agreements. As you will see they granted my client a license to exploit the recordings throughout the World and that right remained until the Advance (US$400,000) paid was re-couped.

Unfortunately, Mr Montes was a very erratic character and caused many problems in the exploitation of the recordings. These problems were then considerably exacerbated by the actions of Kaplan, Kenegos & Kadin/Association of Parliament Funkadelic contacting licensees and making claims to ownership of the recordings. The consequence has been that throughout the duration of the license my clients attemtps at exploitation of the masters has beeing considerably hampered. The net result is that the advance paid to Mr Montes remains substantially un-recouped to the amount of (£132,942-02).

I am sending you with this letter (by courier) copies of my clients Royalty Statements to Nene Montes/Tercer Mundo Inc. but I attach a summary of the same now for your information.

Going forward, my client would be interested in retaing rights to exploit the Funkadelic recordings, particularly if the various claims/counterclaims and legal proceedings concerning the ownership of the same have finally been concluded. Can you please confirm that there are now no pending appeals to the proceedings or any opposing claims to the masters? Could you also please indicate what your clients intentions are in respect of Mr. Montes / Tercer Mundo and the monies received by him?

My client obviously does not know what your clients intentions are in this respect and it would welcome the opportunity todiscuss this with you, your client or a representative of your client. However, at a minimum my client would be interested in acquiring rights on the following basis:

1.      Exclusive License.

2.      Territorry - Europe & Japan.

3.      Term - 5 years (but with the right to grant licenses expiring upto 3 years after the term of the license granted to my client.

4.      Royalty; 20% of net wholesale 50% of net sub-licensing income and any subsidiary income.

5.      Advance US$200,000

In addition to the foregoing, Charly Acquisitions Ltd would agree at its expense to deal with any un-

Continued ../..

Mr O Yale Lewis Jr.                                                      Page 3 of 3
2 July 2007

authorised exploitation of the Funkadelic recordings (in the licensed territories) at its risk and expense, save that any damages or costs recovered as a result of such actions would first be applied against the costs and expenses incurred by Charly Acquisitions Ltd with any balance being split 50:50 with Mr Clinton.

I look forward to hearing from you.

Yours sincerely,

PAUL LAMBETH LLB
ENT-LAW

| Summary of Nene Montes - Funkadelic | | | |
|---|---|---|---|
| Period/Date | Description | Amount £ | Balance £ |
| | Advance - $400000.00 | -261,437.91 | -261,437.91 |
| S2/99 | Royalties Due | 2,830.27 | -258,607.64 |
| S1/00 | Royalties Due | 24,053.43 | -234,554.21 |
| S2/00 | Royalties Due | 5,014.54 | -229,539.67 |
| S1/01 | Royalties Due | 4,324.73 | -225,214.94 |
| S2/01 | Royalties Due | 19,338.04 | -205,876.90 |
| S1/02 | Royalties Due | 7,915.94 | -197,960.96 |
| S2/02 | Royalties Due | 10,599.18 | -187,361.78 |
| S1/03 | Royalties Due | 7,070.27 | -180,291.51 |
| S2/03 | Royalties Due | 12,111.75 | -168,179.76 |
| S1/04 | Royalties Due | 6,569.36 | -161,610.40 |
| S2/04 | Royalties Due | 5,855.52 | -155,754.88 |
| S1/05 | Royalties Due | 4,690.64 | -151,064.24 |
| S2/05 | Royalties Due | 5,890.86 | -145,173.38 |
| S1/06 | Royalties Due | 10,220.07 | -134,953.31 |
| S2/06 | Royalties Due | 4,841.56 | -132,942.02 |

07/02/2007 09:43 FAX  206 583 2716          HENDRICKS & LEWIS                    ☑001

```
                        ********************
                        ***   RX REPORT   ***
                        ********************


        RECEPTION OK

        TX/RX NO              8417
        RECIPIENT ADDRESS     01329834448
        DESTINATION ID
        ST. TIME              07/02 09:42
        TIME USE              00'54
        PGS.                    5
        RESULT                OK
```

**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

GEORGE CLINTON,
an individual resident of the State of Florida,

                Plaintiff,

v.

HENDRICKS & LEWIS, PLLC
a Washington professional limited liability company,
and OSCAR YALE LEWIS, JR., an individual
resident of the State of Washington,

                Defendants.

Case No. _____

Honorable _____

Jury Trial Requested

---

## AFFIDAVIT OF ARCHIE IVY

1.     am an individual resident of the State of Florida and currently reside in the City of Tallahassee, Florida.

2.     I am at least 18 years of age and am competent to testify as to all subject matters set forth herein.

3.     From 1974 through 2010, I was affiliated and/or employed by George Clinton (hereinafter Mr. Clinton) and was directly involved in the management, administration, and commercial development of Mr. Clinton's musical catalog, including the management and enforcement of legal disputes relating to royalties and the use of musical works. The nature of my work for Mr. Clinton required me to communicate and interact with Mr. Clinton's various lawyers and legal counsel.

4.     One such legal enforcement proceeding involved *George Clinton v. Universal Music Group, Inc. et al.,* Case No. 07-672 (Case No. 07-672) before the Honorable Philip J. Gutierrez of the U.S. District Court for the Central District Court of California which was filed in 2007. At the time of filing of this case in 2007 through at least July 2008, Mr. Clinton's primary counsel in this action was Attorney Yale Lewis of the Hendricks & Lewis PLLC law firm of Seattle, Washington (hereinafter Attorney Lewis).

5.    On or about April 24, 2008, I accompanied Mr. Clinton to his scheduled deposition in Case No. 07-672 which was held in the offices of the opposing counsel in Los Angeles, California.  Prior to the actual deposition, I attended and was physically present in a meeting between Mr. Clinton, and his attorney that would be defending Mr. Clinton in his deposition, Attorney Lewis.  This meeting took place in a conference room at the offices of the opposing counsel in Case No. 07-672 shortly before Mr. Clinton's deposition on or about April 24, 2008.  The stated purpose of this meeting was for Attorney Lewis to discuss the scheduled deposition with Mr. Clinton.

6.    During this meeting, Attorney Lewis attempted to coach and directly instruct Mr. Clinton to respond to certain questions with specific answers to be provided by Attorney Lewis.  Specifically, in my physically presence, Attorney Lewis directed Mr. Clinton – if asked and presented with a copy of a certain Release and Settlement Agreement – to state and respond that he did, in fact, sign the Release and Settlement Agreement that was presented to Mr. Clinton.

7.    Mr. Clinton, in my physical presence, responded to this attempted instruction from Attorney Lewis by reminding Attorney Lewis that he (Mr. Clinton) had already told Attorney Lewis that he (Mr. Clinton) had not, in fact, signed the Release and Settlement Agreement and that he (Mr. Clinton) would not under any circumstances say that he did.

8.    Attorney Lewis then informed Mr. Clinton that he had to state that he signed the Release and Settlement Agreement or that the case (Case No. 07-672) would be dismissed.  Mr. Clinton's response was that he did not care, he still would not say that he had signed any document that he actually did not sign.

9.    I swear that the above statements are a true and accurate representation of my recollection of these events as of this day.

FURTHER, Affiant sayeth not.

Dated: July 6 , 2011

Archie Ivy

I, Angela Herndon , am a Licensed Notary Public in the State of Florida, and I attest that the affiant whose signature appears on this document was the person who signed it.

My term expires on      July 24      , 2012.

ANGELA HERNDON
Commission DD 808825
Expires July 24, 2012
Bonded Thru Troy Fain Insurance 800-385-7019

2

**EXHIBIT 6**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

GEORGE CLINTON,
an individual resident of the State of Florida,

Plaintff,

v.

HENDRICKS & LEWIS, PLLC
a Washington professional limited liability company,
and OSCAR YALE LEWIS  JR., an individual resident
of the State of Washington

Defendants.

Case No. _____ .

Honorable _____ ____

---

## AFFIDAVIT OF RICHARD GOMEZ

1.  I am an individual resident of the State of Florida and currently reside in the City
    of Tallahassee, Florida.

2.  I am at least 18 years of age and am competent to testify as to all subject
    matters set forth herein.

3.  Since approximately 2007 to the present, I have been affiliated and/or employed
    by George Clinton (hereinafter Mr. Clinton) in the capacity and function as a
    personal assistant. The nature of my work for Mr. Clinton requires me to
    communicate and interact with Mr. Clinton's various lawyers and legal counsel.

4.  One such legal enforcement proceeding  involved *George Clinton v. Universal
    Music Group, Inc. et al.,* Case No. 07-672 (Case No. 07-672) before the Honorable
    Philip J. Gutierrez of the U.S. District Court for the Central District Court of
    California which was filed in 2007.  At the time of filing of this case in 2007 through
    at least July 2008, Mr. Clinton's primary counsel in this action was Attorney Yale
    Lewis of the Hendricks & Lewis PLLC law firm of Seattle, Washington (hereinafter
    Attorney Lewis).

5.  On Sunday, April 23, 2008, one day prior to Mr. Clinton's scheduled deposition in
    Case No. 07-672 in Los Angeles, California, I was given the task of picking up
    Attorney Lewis at the Los Angeles Airport and driving him to an in-person meeting

1

with Mr. Clinton to discuss the nature and subject matter of Mr. Clinton's deposition testimony. I was then physically present in the meeting between Mr. Clinton and Attorney Lewis on Sunday, April 23, 2008, the stated purpose of this meeting was for Attorney Lewis to discuss the scheduled deposition with Mr. Clinton.

6.  During this meeting, Attorney Lewis attempted to coach and directly instruct Mr. Clinton to respond to certain questions with specific answers to be provded by Attorney Lewis. Specifically, in my physically presence, Attorney Lewis directed Mr. Clinton to: (a) if asked and presented with a copy of a certain interrogatory responses previously submitted in the action – to state and respond that he (Mr. Clinton) did, in fact, agree and affirm the content of the interrogatory responses; and (b) if asked and presented with a copy of a certain Release and Settlement Agreement – to state and respond that he (Mr. Clinton) did, in fact, previously sign the Release and Settlement Agreement.

7.  Mr. Clinton, in my physical presence, responded by reminding Attorney Lewis that he (Mr. Clinton) had already told Attorney Lewis that he (Mr. Clinton) did not agree with the content of the certain interrogatory responses and had not, in fact, signed the Release and Settlement Agreement and that he (Mr. Clinton) would not under any circumstances say that he did.

8.  Attorney Lewis continued to press and pressure Mr. Clinton to change his position and agree to the testimony that was being coached by Attorney Lewis. Mr. Clinton remained adamant that he would not do this and the meeting ended shortly thereafter with Attorney Lewis stating that he would meet with Mr. Clinton again the next day, April 24, 2008, before the deposition to discuss these matters further. I did not attend the subsequent April 24, 2008 meeting between Mr. Clinton and Attorney Lewis, but I do know that Archie Ivy was present at this April 24, 2008 meeting.

9.  I swear that the above statements are a true and accurate representation of my recollection of these events as of this day.

FURTHER, Affiant sayeth not.

Dated: July 6th, 2011

_____
Richard Gomez

I, Todd P. Connors _____, am a Licensed Notary Public in the State of California, and I attest that the affiant whose signature appears on this document was the person who signed it.

My term expires on Dec 14 _____, 2011.

TODD P. CONNORS
COMM. # 178026
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
COMM. EXPIRES DEC. 14, 2011

2

**EXHIBIT 7**

MEMORANDUM

| | |
|---|---|
| TO: | George Clinton, et al |
| FROM: | Janet M. Conway |
| DATE: | May 28, 2008 |
| RE: | Clinton vs. UMG |

George asked me to review the pending motion for summary judgment, draft memorandum in opposition, interrogatories, and Rule 11 motion in the above-referenced case, and to provide my overall thoughts in summary fashion.

After review of the documents, it seems obvious to me that George's attorneys erred in filing the first amended complaint with an allegation that George signed the 1980 contract attached as Exhibit A. Since receipt of that agreement from UMG in 2001, George has consistently maintained that particular contract was not the version that he signed. Further, it is my recollection that the forensic document expert used in the WB case (referred to me by Yale) had serious concerns about the validity of the signatures on the 1980 contract (the same contract that was used in the cut and paste fraudulent 1981 assignment).

Rather, the first amended complaint should have contained allegations similar to the statements made in the footnotes of the interrogatories, which is consistent with George's testimony.

I would attempt to move to amend the complaint based on attorney mistake in pleading and to conform complaint to evidence. I would attach a copy of that motion (with accompanying proposed 2nd amended complaint), and hammer the point in the opposition brief that it was a drafting error, not a repudiation. I would further argue acquiescence to the contract provided by UMG in 2001, as George has accepted royalty statements and proceeded with audit under terms of that contract, regardless of whether George in fact signed that particular document. (Basic contract law provides: "If one party signs, the other may accept by his acts, conduct or acquiescence in the terms of the contract.")

On a side note: I am also surprised that the lawsuit was brought by George Clinton, individually, after dealing with the standing issue raised in the Malbiz lawsuit. In an abundance of caution, perhaps you may want to consider reinstating corporation and adding them as a party in the proposed 2nd amended complaint.