FILED

FEB 20 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE CLINTON, an individual resident of the State of Florida,<br><br>　　　Plaintiff-counter-defendant - Appellant,<br><br>　v.<br><br>HENDRICKS & LEWIS PLLC, a Washington professional limited liability company; OSCAR YALE LEWIS, Jr., an individual resident of the State of Washington,<br><br>　　　Defendants-counter-claimants - Appellees. | No. 12-35791<br><br>D.C. No. 2:11-cv-01142-RSL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted February 4, 2014
Seattle, Washington

Before: FISHER, GOULD, and CHRISTEN, Circuit Judges.

---

　　[*]　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellant George Clinton appeals district court orders (1) granting Hendricks & Lewis's ("H&L") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Clinton's fraudulent inducement and negligent misrepresentation claims, and (2) granting H&L's motion for summary judgment on Clinton's legal malpractice and declaratory relief claims.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

In May 2005, Clinton retained H&L to represent him in civil litigation to recover ownership rights in some of his music recordings. The parties executed a written contract that included an arbitration clause that read in part, "if any dispute should arise between you and us regarding the amount of the fees or costs due to us under the terms of this agreement, the exclusive means of resolving the dispute shall be by submission to binding arbitration." Clinton did not pay his bills, and H&L terminated the relationship in August 2008.

In subsequent arbitration proceedings, H&L sought more than $1.5 million in unpaid legal fees. Clinton failed to assert affirmative defenses or counterclaims during arbitration, and he elected not to attend the arbitration hearing, which

---

[1] Clinton also appears to appeal the district court's order denying his motion to dismiss H&L's counterclaims seeking payment on a judgment debt. Because the district court severed those counterclaims from this case and consolidated and merged them with a different case, however, we dismiss Clinton's appeal on this issue for lack of appellate jurisdiction.

2

resulted in an award to H&L of nearly $1.7 million. United States District Judge John Coughenour confirmed the arbitration award in May 2010.

Later, Clinton sought (1) a declaration that only fee-related disputes were subject to arbitration, and (2) more than $10 million in damages for legal malpractice and professional negligence (together "legal malpractice"), as well as fraudulent inducement and negligent misrepresentation.

The district court dismissed Clinton's fraudulent inducement and negligent misrepresentation claims on the theory that they were barred by *res judicata*. The district court also granted summary judgment to H&L on Clinton's legal malpractice claim, reasoning that California law—and its one-year statute of limitations—applied to bar Clinton's claim. *See* Cal. Civ. Proc. Code § 340.6.[2] Finally, the district court denied as moot Clinton's request for a declaration regarding the scope of the arbitration agreement. This appeal followed.

We review *de novo* district court orders granting or denying Rule 12(b)(6) motions to dismiss, construing all facts in the light most favorable to the nonmoving party. *See Davis v. HSBC Bank Nev.*, 691 F.3d 1152, 1159 (9th Cir. 2012). Similarly, we review *de novo* a district court's grant of a motion for

---

[2] Washington law, by contrast, has a three-year statute of limitations for legal malpractice claims. *See Cawdrey v. Hanson Baker Ludlow Drumheller*, 120 P.3d 605, 608 (Wash. Ct. App. 2005).

3

summary judgment to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there exist any genuine issues of material fact and whether the district court correctly applied the substantive law. *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013).

Because Clinton's fraudulent inducement and negligent misrepresentation claims challenge the validity of the underlying retainer agreement—rather than the validity of the arbitration clause itself—they were arbitrable. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *ATSA of Cal., Inc. v. Cont'l Ins. Co.*, 702 F.2d 172, 175 (9th Cir. 1983) ("[W]hen parties agree to submit disputes to arbitration, it is presumed that the arbitrator will be authorized to determine all issues of law and fact necessary to resolve the dispute."), *amended by* 754 F.2d 1394 (9th Cir. 1985). Because arbitration decisions have preclusive effect, *see Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992), Clinton's failure to raise those claims at arbitration bars him from raising them here, *see Allen v. McCurry*, 449 U.S. 90, 94 (1980) (holding that under *res judicata*, parties may not "relitigat[e] issues that were *or could have been* raised" in a prior action (emphasis added)). As the district court properly concluded, the arbitration award "necessarily presumed the

4

validity and enforceability" of the retainer agreement—an agreement that Clinton may not now collaterally attack.

Clinton's legal malpractice claim seeks damages for alleged harms stemming from H&L's work on cases that were litigated in California and which arose under California law. Moreover, Clinton seeks punitive damages and prejudgment interest, both of which are prohibited in Washington but permitted in California. Thus, while the attorney-client relationship in this case may have originated in Washington, the specific legal work that Clinton challenges occurred in California. As such, California has the "most significant relationship to the action," and it is California's one-year statute of limitations on legal malpractice claims that applies. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 309 P.3d 555, 563 (Wash. Ct. App. 2013); *see also* Cal. Civ. Proc. Code § 340.6.

The limitations period began to run on Clinton's legal malpractice claim no later than September 15, 2008, when the Central District of California entered judgment against Clinton in one of the actions in which he was previously represented by H&L. *See Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1071 (Cal. 1998). When Clinton filed his legal malpractice claim

5

on July 11, 2011, then, it was nearly two years too late in light of California's one-year statute of limitations for such claims.[3]

Finally, without a substantive claim regarding the original retainer agreement, there is no live controversy between the parties, and Clinton's request for declaratory relief is moot. *See Pub. Utils. Comm'n v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996).

**AFFIRMED in part, DISMISSED in part.**

---

[3] Because we affirm the district court's grant of summary judgment to H&L on the ground that the California statute of limitations applies to time-bar Clinton's legal malpractice claim, we need not consider the district court's application of the doctrine of judicial estoppel.

6